UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH F. LAHATTE III AND<br>LAHATTE LAW FIRM, L.L.C.<br><br>VERSUS<br><br>CLAIMS CONSULTING AND<br>CONTRACTING, L.L.C AND<br>NADER ANTHONY ODEH | CIVIL ACTION<br><br>NO. 18-2919<br><br>SECTION M (2) |

**ORDER & REASONS**

Before the Court are: (1) a motion to enforce settlement agreement and for attorney's fees filed by plaintiffs Joseph F. LaHatte III ("LaHatte") and LaHatte Law Firm, LLC (collectively "Plaintiffs"),[1] to which defendants Claims Consulting Contracting, LLC ("CCC") and Nader Anthony Odeh ("Odeh") (collectively "Defendants") respond in opposition,[2] in further support of which Plaintiffs reply,[3] and in further opposition Defendants file a sur-reply;[4] and (2) Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[5] to which Plaintiffs respond in opposition,[6] and in further support of which Defendants reply.[7] Having considered the parties memoranda and the applicable law, the Court issues this Order & Reasons.

**I.    BACKGROUND**

This case arises out of a business relationship between Plaintiffs and Defendants. LaHatte is an attorney who represents clients in property casualty cases.[8] Odeh is a public

---

[1] R. Doc. 22.
[2] R. Doc. 33.
[3] R. Doc. 38.
[4] R. Doc. 43.
[5] R. Doc. 27.
[6] R. Doc. 28.
[7] R. Doc. 40.
[8] R. Doc. 1 at 2.

insurance adjustor and appraiser, and is the sole member of CCC.[9]  For two years, from 2014 to 2016, LaHatte retained Odeh as an expert in numerous property casualty cases.[10]  LaHatte paid Odeh an hourly rate depending on the work he performed on each file, which included: consulting with LaHatte and the client; performing damage estimates for the structure; visiting the loss location to take photographs of, catalog, and price the lost items to create a contents list; and drafting an expert report.[11]

On March 19, 2018, Plaintiffs filed this action against Odeh and CCC alleging that they violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, in working on files for Plaintiffs.[12]  Specifically, Plaintiffs allege that Odeh "committed insurance fraud across state lines by removing items from the homes of property casualty clients of LaHatte Law Firm after an insurance loss event, without prior authorization from the client, and thereafter, submitting the removed item as an insurance loss into that client's insurance claim."[13]  Plaintiffs allege that insurance companies became suspicious of claims submitted by Odeh on behalf of Plaintiffs' clients and would "slow down the claim process, causing clients of the LaHatte Law Firm to wait for longer periods of time for their claims to be processed, which lead to Mr. LaHatte performing more legal work on behalf of those clients to get their claims processed."[14]  Plaintiffs also allege that "many of the fraudulent insurance claims submitted by Mr. Odeh for cases of clients of the LaHatte Law Firm were paid but for less than all of the entire claim; meaning that clients of the LaHatte Law Firm were paid but for less than all of the entire claim" resulting in the clients receiving less money for their claims, and Plaintiffs earning a lower contingency fee.[15]  Plaintiffs further allege that Odeh's actions have

---

[9] *Id.* at 2-3.
[10] *Id.* at 3.
[11] *Id.*
[12] *Id.* at 2-9.
[13] *Id.* at 3.
[14] *Id.* at 4.
[15] *Id.* at 4-5.

harmed LaHatte's reputation among other attorneys and insurance companies.[16] In addition to the RICO claims, Plaintiffs allege that Defendants are liable for defamation, intentional infliction of emotional distress, violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), and negligence.[17]

On March 20, 2018, the Clerk of Court issued the RICO Standing Order in this case directing Plaintiffs to file, within twenty-one (21) days of the entry of the Order, a RICO case statement more fully explaining their RICO claim.[18] Before that 21-day period elapsed, Plaintiffs filed into the record a notice of settlement on April 9, 2018.[19] The next day, Plaintiffs moved for an extension of time to file the RICO case statement.[20] On April 11, 2018, the Court[21] granted Plaintiffs an additional thirty (30) days to file the RICO case statement, and ordered that the case would be dismissed in sixty (60) days unless the parties informed the Court that the settlement had not been consummated.[22] On May 15, 2018, upon Plaintiffs' representation that the parties needed two additional business days to finalize the settlement agreement,[23] the Court granted Plaintiffs an additional two business days from the signing of the Order to file a RICO case statement.[24] On June 8, 2018, Plaintiffs informed the Court that the parties had a dispute regarding the settlement.[25] Plaintiffs filed their motion to enforce settlement agreement on June 25, 2018.[26] Thereafter, on June 27, 2018, Defendants filed their motion to dismiss.[27]

---

[16] *Id.* at 5.
[17] *Id.* at 9-12.
[18] R. Doc. 5.
[19] R. Doc. 11.
[20] R. Doc. 14.
[21] This case was originally allotted to Section G. R. Doc. 2. It was re-allotted to Section M upon the confirmation of the undersigned. R. Doc. 44.
[22] R. Doc. 15.
[23] R. Doc. 17.
[24] R. Doc. 18.
[25] R. Doc. 19.
[26] R. Doc. 22.
[27] R. Doc. 27.

## III. LAW & ANALYSIS

### A. Plaintiffs' Motion to Enforce Settlement Agreement (R. Doc. 22)

Plaintiffs move to enforce a settlement agreement that they claim they entered into with Odeh to resolve the issues in this case and other matters between the parties.[28] The settlement agreement also purports to resolve claims between Plaintiffs and Jessica Muhs Campos ("Campos"), an employee of Odeh and CCC.[29] Odeh and LaHatte signed the settlement agreement; however, Campos refused to sign.[30] Plaintiffs argue that, regardless of Campos' refusal to sign the settlement agreement, this Court should find that the parties to this action entered into a valid and enforceable settlement agreement resolving the claims at issue in this litigation.[31] Defendants argue that the settlement agreement is not enforceable because Campos' signature was required to consummate the settlement.[32]

District courts have "inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994) (citations omitted). Federal law governs questions regarding the enforceability or validity of a purported settlement agreement when "the substantive rights and liabilities of the parties derive from federal law." *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) (citations omitted). On the other hand, when the parties' substantive rights and liabilities are derived from state law, the district court applies state law to determine the enforceability or validity of the purported settlement agreement. *Lafevre v. Keaty*, 191 F.3d 596, 598 (5th Cir. 1999). In this case, the purported settlement agreement covers both federal and

---

[28] R. Doc. 22.
[29] R. Doc. 22-7 at 1-2.
[30] *Id.* at 2.
[31] *Id.* at 2-10.
[32] R. Doc. 33 at 1-14.

state law claims; thus, it must be valid and enforceable under both Louisiana and federal law.[33] *Jason v. Parish of Plaquemines*, 2017 WL 993152, at * 2 (E.D. La. Mar. 15, 2017).

Under Louisiana law, a settlement agreement, also known as a compromise, "is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071. "A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings" *Id*. art. 3072. Although Article 3072 does not expressly require a signed writing, the Louisiana Supreme Court "has held several times that … there is an implied requirement for signatures of [the] parties." *Lavan v. Nowell*, 708 So. 2d 1052, 1052 n.3 (La. 1998) (citations omitted). Further, "Louisiana appellate courts have consistently found unsigned written settlement agreements to be unenforceable." *Jason*, 2017 WL WL 993152, at * 3 (citations omitted).

It is undisputed that Campos, an express party to the settlement agreement, did not sign it. Nor have Plaintiffs pointed to any other document signifying Campos' assent to the settlement. Therefore, under Louisiana law, there was no compromise. This result is bolstered by the terms of the purported settlement agreement because it expressly states that its "Effective Date" is "the date on which [it] has been executed by all the parties hereto, as reflected on the signature page(s) of this Agreement." Campos' name is reflected on the signature page yet she did not sign. Therefore, the purported settlement agreement never became effective by its own terms. Accordingly, Plaintiffs' motion to enforce the settlement agreement is DENIED.

---

[33] LaHatte argues that Louisiana law applies because the purported settlement agreement contains a choice-of-law clause providing for the application of Louisiana law to disputes regarding the enforceability of the settlement agreement. R. Doc. 22-7 at 4 & 22-8 at 8. Because the settlement agreement, in part, addresses Louisiana state-law claims, its enforceability must be examined under Louisiana law. *Jason*, 2017 WL 993152, at * 2. Therefore, it is unnecessary to determine whether the choice-of-law clause is enforceable.

### B. Defendants' Motion to Dismiss (R. Doc. 27)

Defendants argues that Plaintiffs' RICO claim should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the allegations contained in the complaint do not sufficiently state a RICO claim.[34] Defendants further argue that, once the RICO claim is dismissed, this Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' remaining state law claims.[35] Plaintiffs argue that Defendants' motion to dismiss is premature, and they should be permitted to file their RICO case statement before this Court rules on the merits of Defendants' motion to dismiss.[36] The Court agrees.

The record reflects that Plaintiffs did not timely file a RICO case statement because they believed that this case had settled. Because this Court now finds that the purported settlement agreement is unenforceable, it will allow Plaintiffs thirty (30) days from the date of this Order & Reasons to file a RICO case statement. Accordingly, Defendants' motion to dismiss is DENIED without prejudice to refiling after Plaintiffs file their RICO case statement.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiffs' motion to enforce settlement agreement and for attorney's fees (R. Doc. 22) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion to dismiss is denied without prejudice to refiling after Plaintiffs file their RICO case statement.

IT IS FURTHER ORDERED that Plaintiffs are granted leave to file a RICO case statement within thirty (30) days of the date of this Order & Reasons.

---

[34] R. Doc. 27-1 at 4-17.
[35] *Id.* at 17-20.
[36] R. Doc. 28 at 4-5.

New Orleans, Louisiana, this 24th day of January, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE